IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SUNBELT MACHINE WORKS CORP., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| ALL AMERICAN CNC SALES, INC. | § | CIVIL ACTION NO. H-09-0108 |
| d/b/a ELITE MACHINE TOOL CO., | § | |
| ALL AMERICAN SALES, INC. d/b/a | § | |
| CNC REPOS, INC., GATEWAY | § | |
| INTERNATIONAL HOLDINGS, INC., | § | |
| and TIM CONSALVI, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Sunbelt Machine Works, Corp., brings this action against defendants, All American CNC Sales, Inc. d/b/a Elite Machine Tool Co., All American Sales, Inc. d/b/a CNC Repos, Inc., Gateway International Holdings, Inc., and Tim Consalvi, for breach of contract. Pending before the court is Complainant's First Amended Motion for Summary Judgment (Docket Entry No. 25). For the reasons explained below, the motion will be granted and the parties will be ordered to submit a final judgment agreed as to form within ten (10) days.

**I.   Standard of Review**

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the law

entitles it to judgment. Fed. R. Civ. P. 56(c). Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2511 (1986). The Supreme Court has interpreted the plain language of Rule 56(c) to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986). A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. Id. (citing Celotex, 106 S.Ct. at 2553-2554). In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Products, Inc., 120 S.Ct. 2097, 2110 (2000). Factual controversies are to be resolved in favor of the nonmovant,

"but only when . . . both parties have submitted evidence of contradictory facts."  Little, 37 F.3d at 1075.

## II.  Undisputed Facts

Undisputed evidence establishes that on or about July 8, 2008, defendants actively solicited Sunbelt's business in Fort Bend County, Texas, by calling and e-mailing Frank Scantlin, Sunbelt's Chief Executive Officer.  On July 21, 2008, Sunbelt purchased the Makino MC98 HMC A94-442 (Makino) from Elite for $139,000.00.  On or about July 31, 2008, the Makino was delivered to Sunbelt in poor condition.  On or about September 15, 2008, Elite sent a technician -- Bob Hail -- to inspect the Makino.  After the inspection Hail agreed that the Makino was in poor condition.  On October 1, 2008, Tim Consalvi on behalf of himself and Elite Machine Tool Company and Frank Scantlin on behalf of himself and Sunbelt signed an agreement whereby defendants would pick up the Makino from Sunbelt and within 90 days wire transfer $139,000.00 to Sunbelt.  On October 9, 2008, defendants' representatives picked up the Makino from Sunbelt in Fort Bend County, Texas.  Despite the fact that more than 90 days have passed since the defendants picked up the Makino, defendants have not wire transferred $139,000.00 to Sunbelt.[1]

---

[1] See Affidavit of Frank Scantlin, Exhibit 1 attached to Complainant's First Amended Motion for Summary Judgment, Docket Entry No. 25, and exhibits attached thereto.  See also Declaration of Robert Hail attached to Defendants' Opposition to Complainant's
(continued...)

### III.  Analysis

Sunbelt argues that it is entitled to summary judgment on its claim for breach of contract, attorneys' fees, costs, and pre-judgment and post-judgment interest.  Defendants argue that Sunbelt is not entitled to summary judgment on its breach of contract claim but do not dispute that Sunbelt would be entitled to attorneys' fees, costs, and pre-judgment and post-judgment interest if the court concludes otherwise.

**A.   Sunbelt's Claim for Breach of Contract**

Sunbelt argues that it is entitled to summary judgment on its breach of contract claim against defendants because defendants agreed to wire transfer $139,000.00 to Sunbelt in exchange for receipt of the Makino.  Defendants received the Makino on October 9, 2008, but have not honored the agreement to wire transfer the $139,000.00 to Sunbelt.  Defendants argue that Sunbelt's motion for summary judgment should be denied because genuine issues of triable fact exist, and they have not had adequate time for discovery.

1.   Applicable Law

In Texas "the essential elements of a breach of contract claim are:  (1) the existence of a valid contract; (2) performance or

---

[1](...continued)
Motion for Summary Judgment, Docket Entry No. 27.  See also Defendants' Opposition to Complainant's Motion for Summary Judgment, Docket Entry No. 27, pp. 2-3.

-4-

tendered performance by the plaintiff; (3) breach of the contract by the defendant, and (4) damages sustained by the plaintiff as a result of the breach." Mullins v. TestAmerica, Inc., 564 F.3d 386, 418 (5th Cir. 2009) (citing Aguiar v. Segal, 167 S.W.3d 443, 450 (Tex. App. -- Houston [14th Dist.] 2005, pet. denied)).

    2.    Application of the Law to the Facts

        (a)  Existence of Valid and Enforceable Contract

As evidence for the existence of a valid and enforceable contract between the parties, Sunbelt has submitted an affidavit executed by its Chief Executive Officer, Frank Scantlin, together with a copy of a letter from defendants' counsel, Robert Sabahat, that was signed in agreement by Tim Consalvi on behalf of himself and Elite Machine Tool Company, and by Frank Scantlin on behalf of himself and Sunbelt Machine Works.  The letter provides in pertinent part:

    1.    Elite Machine Tool Company is to pick up the Makino at Sunbelt Machine Works place of business, after the receipt of this agreement, with completed signatures.

    2.    Sunbelt Machine Works will allow Elite Machine Tool Company 90 days from October 1, 2008, until January 1, 2009, to sell Makino MC98 HMC S/N A94-442 and wire transfer $139,000.00 to Account . . . at Frost Bank.  The wire transfer of $139,000 is not contingent on the sale of the Makino MC98.[2]

---

[2]Exhibit 1 attached to Affidavit of Frank Scantlin, Exhibit 1 attached to Complainant's First Amended Motion for Summary Judgment, Docket Entry No. 25.

The last sentence of the second paragraph was handwritten by Sunbelt's counsel with the permission of the defendants' counsel and initialed by Scantlin. After Scantlin initialed the last sentence, Sunbelt's counsel faxed the agreement to defendants' counsel late in the afternoon of October 2, 2008.[3]

Defendants respond that they

> believe that no money would be refunded unless the Machine has been sold as agreed upon on or about October 2008. Sunbelt's contention that the wire transfer was not contingent on the sale of the Machine was erroneous as Defendants never obtained a copy of the October 2008 Offer modifying the terms of the Defendants' Offer.
>
> Defendants also believe that the full amount could not be refunded based on Sunbelt's apparent use of the Machine contributing to its further deteriorated condition. Furthermore, Defendants have incurred more expenses than necessary to bring [the Makino] back to a saleable condition.[4]

---

[3]See Affidavit of Blake C. Erskine, Jr., Exhibit 2 attached to Complainant's Reply Brief to Defendants' Response to Complainant's First Amended Motion for Summary Judgment, Docket Entry No. 28, ¶¶ 4-5 stating:

> 4. I called Mr. Robert Sabahat by telephone prior to Complainant executing the Agreement, attached hereto as Exhibit 1, and received his permission and agreement on behalf of his client to write in the words *"The wire transfer of $139,000 is not contingent on the sale of the Makino MC98."*
>
> 5. The Agreement attached hereto as Exhibit 1 was faxed back to Mr. Robert Sabahat per his instructions on October 2, 2008.

[4]Defendants' Opposition to Complainant's Motion for Summary Judgment, Docket Entry No. 27, third unnumbered page.

Defendants contend that after they "faxed their offer to Sunbelt, [they] never received anything,"[5] and thus were unaware that Sunbelt had modified the terms of the contract.  Defendants contend that despite their best efforts they were unable to sell the Makino because of its poor condition, and that only when they were unable to fix the Makino did they learn that "the [m]achine's poor condition was defective due to Sunbelt's apparent use of the Machine."[6]  Defendants explain that

> Sunbelt claimed that the full $139,000 would be refundable because it had received a defective Machine. This is contrary to Bob Hail's understanding and report, where he found the Machine was defective due to Sunbelt's apparent use of the machine.  Sunbelt had use of the Machine from July 21, 2008 to October 9, 2008. According to Bob Hail, Defendants' representative, when he went to pick up the Machine it was powered on and based on its appearance, Sunbelt had been using the Machine while it was in its possession.[7]

Thus, defendants argue that "an issue of fact arises as to whether the Machine was defective upon its arrival or whether it was defective after Sunbelt's use of it or to what extent did Sunbelt's use of the machine contribute to the machine's poor condition upon pick up by Elite."[8]

---

[5] Id. at fifth unnumbered page.

[6] Id.

[7] Id. at sixth unnumbered page.

[8] Id.

Defendants' arguments and/or contentions are insufficient to raise a genuine issue of material fact for trial because they are not supported by any evidence. See <u>Texas Department of Community Affairs v. Burdine</u>, 101 S.Ct. 1089, 1095 n.9 (1981) ("An articulation not admitted into evidence will not suffice. Thus, the defendant cannot meet its burden merely through an answer to the complaint or by argument of counsel."). Although defendants contend that they were unaware that Sunbelt had modified the terms of the contract, defendants have not submitted any evidence that either substantiates their contention that Sunbelt failed to return the modified contract to them, or shows that they were unaware of the contract modifications when they retrieved the Makino from Sunbelt on or about October 9, 2008. Because defendants have failed to present any evidence from which a reasonable trier of fact could conclude that the terms of the October 1, 2008, contract did not require the defendants to refund the $139,000 purchase price to Sunbelt regardless of whether they were able to resell the Makino, neither defendants' assertion that they have been unable to sell the Makino, nor evidence of their efforts to sell it that they have attached to their sur-reply is capable of raising a genuine issue of material fact for trial.[9]

---

[9] See <u>id.</u> at third unnumbered page. See also Defendants' Sur-Reply to Complainant's Reply Brief to Defendants' Opposition to Complainant's Motion for Summary Judgment, Docket Entry No. 29, third unnumbered page.

Defendants refer to a report made by their employee, Bob Hail, in support of their argument that Sunbelt's operation of the Makino may have caused its poor condition; but the declaration of Bob Hail that defendants have submitted in support of their opposition to Sunbelt's motion for summary judgment neither references any such report nor substantiates the defendants' argument that Sunbelt may have been responsible for the Makino's poor condition.  Bob Hail states only that

1.   I am employed by Elite Machine Tool Company.

2.   I visited Sunbelt Machine works and viewed the Makino MC 98 machine sold to [S[unbelt by Elite.

3.   At my visit to Sunbelt, I noticed that the Makino MC 98 was hooked up to power.[10]

A reasonable fact-finder could not conclude from Hail's statements that the Makino's poor condition was caused or worsened by Sunbelt, or that the defendants' agreement to refund the Makino's purchase price to Sunbelt was contingent upon the Makino being in good enough condition for the defendants to resell.

### (1)  Sunbelt Performed Its Contractual Obligations

Defendants do not dispute that Sunbelt has performed its obligations under the contract by delivering the Makino to defendants' representatives on or about October 9, 2008.

---

[10]Declaration of Robert Hail attached to Defendants' Opposition to Complainant's Motion for Summary Judgment, Docket Entry No. 27.

### (2)  Defendants' Breach of Contract

Defendants do not dispute that despite having received the Makino in October of 2008, they have not wire transferred $139,000.00 to Sunbelt.

### (3)  Sunbelt's Damages

Defendants do not dispute Sunbelt's contention that it has sustained damages as a result of their failure to wire transfer $139,000.00 to Sunbelt.

### (b)  Defendants' Need for Discovery

Asserting that they "have not had the time to conduct any discovery,"[11] defendants argue that they need a continuance so that they can conduct discovery "to prove beyond preponderance of evidence that the Machine's defect was due to Sunbelt's use."[12] Defendants explain that

> the only evidence that the Defendants have in refuting Complainant's case is the report from Bob Hail and that of the local technician.  Defendants believe, however, that given time for an adequate discovery the Defendants would be able to support with substantiated evidence their assertions in regard to the Machine's defectiveness.  Defendants would be able to claim that the Machine was defective due to Sunbelt's apparent use and not when it was delivered to Sunbelt.[13]

---

[11]Defendants' Opposition to Complainant's Motion for Summary Judgment, Docket Entry No. 27, seventh unnumbered page.

[12]Id.

[13]Id. at seventh and eighth unnumbered pages.

Defendants explain further that

> [b]ased on all the series of service reports and invoices provided by the Defendants attached hereto as Exhibit 1 and Exhibit 2, Defendants have provided competent summary judgment evidence that the machine, while in Complainant's possession, deteriorated further.  Continuance is necessary in order to further support with substantiating evidence the cause of [the] machine's defectiveness and the causes of such defectiveness.[14]

Although defendants argue that they need additional time to conduct discovery on their belief that the Makino's poor condition may be attributable to Sunbelt's use of the Makino between the date it was delivered to Sunbelt and the date it was retrieved from Sunbelt by defendants' representatives, defendants fail to explain what discovery they need, what steps — if any — they have already taken to obtain that discovery, or why such discovery would be likely to produce evidence showing either that they did not breach their obligations under the contract or that Sunbelt breached its obligations under the contract.  Accordingly, the court is not persuaded that the defendants are entitled to a continuance to conduct additional discovery, or that such discovery would be likely to produce relevant evidence.

    3.    <u>Conclusions</u>

For the reasons explained above, the court concludes that Sunbelt has presented evidence in support of each element of its

---

[14]Defendants' Sur-Reply to Complainant's Reply Brief to Defendants' Opposition to Complainant's Motion for Summary Judgment, Docket Entry No. 29, third and fourth unnumbered pages.

claim for breach of contract and that the defendants have failed to present evidence that raises a genuine issue of material fact for trial. Accordingly, the court concludes that Sunbelt is entitled to summary judgment on its claim for breach of contract.

**B.     Sunbelt's Claims for Attorneys' Fees, Costs, and Interest**

Sunbelt argues that it is entitled to recover its attorneys' fees, costs, and expenses because it was required to retain legal counsel and file suit to enforce its rights under the contract.[15]

### 1.     Attorneys' Fees and Costs

Sunbelt submits the affidavit of Blake C. Erskine, Jr., in support of its application for attorneys' fees.[16] In his affidavit Erskine states that he is an attorney licensed to practice in the United States District Court for the Southern District of Texas, Houston Division, that as of June 9, 2009, he has been practicing law in the State of Texas for 16 years; that up to the date of filing Complainant's Motion for Summary Judgment on June 1, 2009, he has spent a total of 25 hours working on this case; and that an hourly rate of $350 is usual and customary in Austin, Travis County, Texas, and in Houston, Harris County, Texas. Erskine also states that the complainant has incurred $809.00 in

---

[15] Complainant's First Amended Motion for Summary Judgment, Docket Entry No. 25, p. 5.

[16] See id. (seeking $8,750.00 in attorneys' fees and $809.00 in reasonable and necessary taxable costs), and Amended Affidavit of Blake C. Erskine, Jr., Docket Entry No. 26.

reasonable and necessary taxable court costs that are evidenced by a true and correct copy of the Erskine & Blackburn, L.L.P. Job Ledger Report for this case. Defendants have not submitted any argument or evidence opposing Sunbelt's claims for attorneys' fees and costs.

(a) Attorneys' Fees

The Texas Civil Practice and Remedies Code provides that a party may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for an oral or written contract. Tex Civ. Prac. & Rem. Code § 38.001. Because the court has concluded that Sunbelt is entitled to summary judgment on its breach of contract claim, the court also concludes that Sunbelt is entitled to an award of attorney's fees.

A party seeking attorney's fees in federal court bears the burden of producing adequate documentation of the hours spent litigating the claims. See <u>League of United Latin American Citizens No. 4552 (LULAC) v. Roscoe Independent School District</u>, 119 F.3d 1228, 1232-33 (5th Cir. 1997). Specifically, the moving party must detail the hours expended in a manner that is sufficient for the court to confirm the party has met its burden. <u>Id.</u> (citing <u>Louisiana Power & Light Co. v. Kellstrom</u>, 50 F.3d 319, 324 (5th Cir. 1995), <u>cert. denied sub nom.</u> <u>L.K. Comstock & Co. v. Louisiana Power & Light Co.</u>, 116 S.Ct. 173 (1995)). The court has discretion

to reduce or deny an attorney's fee request that is based on inadequate documentation. LULAC, 119 F.3d at 1233 (citing Kellstrom, 50 F.3d at 326-27). Here, Sunbelt has submitted the Erskine affidavit to support the amount of the requested attorneys' fees, and defendants have not disputed either the amount of attorneys' fees or the sufficiency of the evidence submitted in support of that request. Accordingly, the court concludes that Sunbelt is entitled to recover the $8,750.00 in attorneys' fees evidenced by the Erskine affidavit.

    (b)  Costs

Sunbelt also requests costs in the amount of $809.00. The Ledger Report attached to the Erskine affidavit shows that the costs that Sunbelt seeks include the filing fee paid to the court clerk and fees paid to private process servers.[17]

Federal Rule of Civil Procedure 54(d)(1) provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs — other than attorneys' fees — should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). The Fifth Circuit has stated that Rule 54(d)(1) creates a strong presumption that the prevailing party will be awarded costs. See Cheatham v. Allstate Insurance Co., 465 F.3d 578, 586 (5th Cir. 2006). Title 28 U.S.C. § 1920(1) allows the court to tax "[f]ees of the clerk

---

[17]See Job Ledger Report attached to Affidavit of Blake C. Erskine, Jr., Exhibit 4 attached to Complainant's First Amended Motion for Summary Judgment, Docket Entry No. 25.

and marshal." Courts in this circuit have interpreted § 1920(1) to permit the award of costs for service of summons by private process servers because the service of summonses and subpoenas is now done almost exclusively by private parties employed for that purpose and not by the United States Marshal. See Gaddis v. United States, 381 F.3d 444, 456 (5th Cir. 2004) (en banc) ("section 1920(1)'s phrase '[f]ees of the clerk and marshal' has been interpreted . . . to include private process servers' fees as taxable costs."). Accordingly, the court concludes that Sunbelt is entitled to recover the $809.00 in reasonable and necessary costs evidenced by the Erskine affidavit.

2. Pre-Judgment and Post-Judgment Interest

Sunbelt is entitled to both pre-judgment and post-judgment interest on the actual award of $139,000.00. See Hall v. White, Getgey, Meyer Co., LPA, 465 F.3d 587, 594-95 (5th Cir. 2006).

(a) Pre-Judgment Interest

Pre-judgment interest is "compensation allowed by law as additional damages for lost use of the money due as damages during the lapse of time between the accrual of the claim and the date of judgment." International Turbine Services, Inc. v. VASP Brazilian Airlines, 278 F.3d 494, 499 (5th Cir. 2002) (quoting Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc., 962 S.W.2d 507, 528 (Tex. 1998)). The Texas Supreme Court has recognized two separate bases for the award of pre-judgment interest: (1) an enabling

-15-

statute; and (2) general principles of equity.  Id. (citing Johnson & Higgins, 962 S.W.2d at 530).  In Texas statutory pre-judgment interest applies only to judgments in wrongful death, personal injury, property damage, and condemnation cases.  Id. (citing Tex. Fin. Code §§ 304.102, 304.201).  See also Johnson & Higgins, 962 S.W.2d at 530.  Because Sunbelt's breach of contract claim does not fall within the statutory provisions, the pre-judgment interest award is governed by Texas common law.  Id. (citing Johnson & Higgins, 962 S.W.2d at 520, and Adams v. H&H Meat Products, Inc., 41 S.W.3d 762, 780 (Tex. App. -- Corpus Christi, 2001, no pet.).  Texas common law allows pre-judgment interest to accrue at the same rate as post-judgment interest on damages awarded for breach of contract.  Id. (citing Johnson & Higgins, 962 S.W.2d at 532).  The current rate of post-judgment interest is five percent per annum, simple interest.  Id. (citing Tex. Fin. Code § 304.003).

(b)  Post-Judgment Interest

The post-judgment interest rate that applies to judgments entered in federal court is governed by federal law.  See Hall, 465 F.3d at 595 (citing 28 U.S.C. § 1961(a)).  Section 1961(a) provides:

> Interest shall be allowed on any money judgment in a civil case recovered in a district court. . . Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by

      the Board of Governors of the Federal Reserve System, for
      the calendar week preceding the date of the judgment.
      The Director of the Administrative Office of the
      United States Courts shall distribute notice of that rate
      and any changes in it to all Federal judges.

Today, that post-judgment interest rate is 0.44% per annum.

### IV. <u>Conclusions and Order</u>

For the reasons explained above, Complainant's First Amended Motion for Summary Judgment (Docket Entry No. 25) is **GRANTED**.

The parties are **ORDERED** to submit a Final Judgment agreed as to form within ten (10) days. The September 11, 2009, Docket Call is **CANCELED**.

**SIGNED** at Houston, Texas, on this 26th day of August, 2009.

                                        SIM LAKE
                          UNITED STATES DISTRICT JUDGE